UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MANUEL MELIKYAN,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

No. 2:13-cv-02184-AC

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment and remand this matter under sentence four of 42 U.S.C. § 405(g) for immediate payment of benefits.

## I. PROCEDURAL BACKGROUND

Plaintiff, born July 29, 1961, applied on August 23, 2010 for DIB and SSI, alleging disability beginning July 1, 2007. Administrative Transcript ("AT") 125, 132. Plaintiff alleged he was unable to work due to his depression, anxiety, poor memory, kidney problems, headaches, prostate problems, fatigue and high blood pressure. AT 162. In a decision dated March 22, 2012,

the ALJ determined that plaintiff was not disabled. AT 23. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since July 1, 2007, the alleged onset date.
>
> 3. The claimant has the following severe impairments: hypertension; obesity; depressive disorder; [and] anxiety disorder.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work . . . including lifting up to 50 pounds occasionally and 25 pounds frequently, and sitting, standing and/or walking up to 6 hours in an 8-hour workday, with the follow[ing] restrictions: he is limited to unskilled work; he is limited to work activity requiring only occasional interaction with supervisors, co-workers, and the general public.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on July 29, 1961, and was 49 years old, which is defined as a younger individual age 18-49, on the date the applications were filed.
>
> 8. The claimant has limited ability to communicate in English.
>
> 9. Transferability of job skills is not an issue because the claimant is limited to unskilled work.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2007, through the date of this decision.

AT 13-23.

## II. FACTUAL BACKGROUND

Born on July 29, 1961, plaintiff was 45 years old on the alleged onset date of disability and 50 at the hearing before the ALJ. AT 31, 125, 132. Plaintiff has a limited ability to speak English. AT 22. He reported having a high school equivalent from school in Armenia. AT 304.

He last worked as a mechanic in a car shop. AT 154.

III. ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly evaluated the medical opinions in the record; (2) plaintiff's mental RFC is not supported by substantial evidence; and (3) the ALJ improperly discredited plaintiff.[1]

IV. LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

[1] As discussed below, the ALJ improperly rejected the medical opinions of Drs. Ewing and Gevorkian. Because this issue is dispositive, the court need not address plaintiff's remaining arguments.

1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## V. ANALYSIS

### A. Medical Opinions

Plaintiff contends the ALJ erred in evaluating the medical opinions in the record. In particular, plaintiff attacks the ALJ's negative assessment of the opinions of Dr. Gervorkian, a treating psychiatrist, and Dr. Ewing, an examining psychologist. There are three types of physicians relevant to disability determinations: treating physicians, examining physicians, and nonexamining physicians. "If a treating doctor's opinion is not contradicted by another doctor (i.e., there are no other opinions from examining or nonexamining sources), it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record." See Ryan v. Comm'r of Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). "If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); Ryan, 528 F.3d at 1198.

"[T]he medical opinions of a claimant's treating physicians are entitled to special weight." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). If the ALJ disregards a treating physician's opinion, the ALJ must "set[ ] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." Esposito v. Astrue, 2012 WL 1027601, CIV S-10-2862-EFB at *3 (E.D.Cal. Mar. 26, 2012).

////

A nonexamining physician's function is to read medical evidence in a claimant's case records, decide whether or not the claimant's impairments meet or equal the Listings, and determine the claimant's Residual Functional Capacities. 20 C.F.R. § 416.927(e)(1)(i). Because nonexamining physicians do not have the benefit of hearing the claimant's complaints of pain, their opinions as to claimant's pain are of "very limited value." Penny v. Sullivan, 2 F.3d 953, 957 (9th Cir. 1993).

1. Dr. Gevorkian

Dr. Gevorkian began treating plaintiff in December 2010 and reported seeing plaintiff on a regular basis. AT 426. He completed a medical assessment of plaintiff's ability to perform work-related activities dated June 1, 2011. AT 414-16. In that assessment, Dr. Gevorkian opined that plaintiff had poor ability to follow work rules, relate to co-workers, deal with the public, deal with work stresses, understand, remember and carry out detailed job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. AT 414-15. He further opined that plaintiff had a fair ability to use judgment, interact with supervisors, function independently, maintain attention and concentration, understand, remember and carry out simple job instructions, and maintain personal appearance. AT 414-15. In support of this opinion, Dr. Gevorkian stated that plaintiff has poor concentration and impaired judgment due to his depression and that plaintiff also suffers from paranoia. AT 415-16. He ultimately opined that plaintiff "was unable to work due to having Major Depression." AT 416.

Dr. Gevorkian also completed a mental disorder questionnaire form dated January 19, 2012. AT 426. In the questionnaire, Dr. Gevorkian noted that plaintiff did not maintain good eye contact during evaluations and has been compliant with medications. AT 426. He further noted plaintiff's long history of depression and anxiety which he opined were getting worse. AT 426. He described plaintiff's then-current mental status as generally "depressed, at times tearful with psychomotor retardation." AT 427. Plaintiff's speech was delayed and his concentration, memory, insight and judgment were impaired. AT 427-28. Dr. Gevorkian concluded plaintiff has borderline intellectual functioning. AT 428. As to social functioning, he noted plaintiff had difficulty communicating with family members, did not interact with neighbors or friends, and

was not interested in meeting new people. AT 429. With regard to concentration and task completion, he stated plaintiff has difficulty maintaining focused attention or doing household chores and, although he can understand simple instructions, he cannot carry them out due to his depression. AT 429. Dr. Gevorkian also concluded that, due to his depression, plaintiff could not adapt to normal work-related stress such as decision making, attendance, schedules and interactions with others. AT 429.

The ALJ gave Dr. Gevorkian's opinions little weight, reasoning that Dr. Gevorkian's progress notes were illegible, seemed cursory, and did not include mental status findings, and that his treatment history with plaintiff was brief. AT 21. Dr. Gevorkian's opinions are contradicted by the observations and opinions of Drs. Bui (AT 288, 295 [urologist observing plaintiff with "[n]o anxiety, no depression, and no sleep disturbances"]), Ewing (AT 306 [can perform simple and complex tasks]), and Mateus (AT 365 ["retains ability to sustain simple and some detailed tasks"].) Because Dr. Gevorkian's opinions are contradicted, the ALJ could reject them only on the basis of specific and legitimate reasons which are supported by substantial evidence. See Valentine, 574 F.3d at 692; Ryan, 528 F.3d at 1198. None of the ALJ's stated reasons were adequate to support rejection of Dr. Gevorkian's opinions.

The ALJ stated first that Dr. Gevorkian's progress notes lacked mental status findings, were illegible and seemed cursory. AT 21. To the extent the ALJ meant that Dr. Gevorkian's own notes failed to support his opinions because they lacked mental status findings and were illegible and cursory, the ALJ clearly erred. Dr. Gevorkian's contemporaneous progress notes, AT 420-25, are no less legible or more cursory than the typical handwritten notes of discrete appointments. The progress notes include decipherable notations regarding the persistence of plaintiff's delusions, depressed mood, anxiety and restricted affect. Dr. Gevorkian's initial evaluation note included a thorough mental status report, AT 424-25, and his final report also included a detailed mental status evaluation, AT 427-28. That report also drew on past progress notes to summarize plaintiff's progress over the period of treatment. Nothing about the progress notes is inconsistent with the opinions. The legibility of the notes is not a legitimate consideration which can support rejection of the opinion.

An ALJ may reject an opinion that is not supported by the record. This rule permits rejection of "check-off reports" that lack explanation of the bases for their conclusions. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996). Contrary to the Commissioner's argument here, Dr. Gevorkian's completion of a checklist, see AT 414-16, does not support rejection of his opinions. First, Dr. Gevorkian did provide some explanation of his responses on the form. Id. Second, the checklist responses are consistent with plaintiff's well-documented history of depression, anxiety, and medication compliance. See AT 426. Finally, Dr. Gevorkian's second opinion came in the form of five-page narrative describing his general observations of plaintiff, plaintiff's past history of mental disorder, his family, social and environmental history, his current mental status, his then-current level of functioning, diagnosis, and prognosis. Neither opinion qualifies as the kind of unsupported "check-off report" that may be disregarded by the ALJ.

To the extent the Commissioner argues that Dr. Gevorkian's mental status findings were properly rejected because they were based on plaintiff's subjective reports rather than objective testing, the argument is misplaced. "[O]bjective demonstrability is not the correct standard to be applied in evaluating evidence of mental disorders." Christensen v. Bowen, 633 F. Supp. 1214, 1220 (N.D. Cal. 1986). See also Lebus v. Harris, 526 F. Supp. 56, 60 (N.D. Cal. 1981); Taddeo v. Richardson, 351 F. Supp. 177, 180 (C.D. Cal. 1972). Because Dr. Gevorkian's opinion was substantially based on his own clinical observations, there is no evidentiary basis for rejecting the opinion. See Ryan, 528 F.3d at 1199-1200.

Finally, the ALJ characterized Dr. Gevorkian's treatment history with plaintiff as "quite brief." AT 21. The regulations state: "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2)(i); 416.927(c)(2)(i). Dr. Gevorkian treated plaintiff from December 15, 2010 to January 18, 2012. AT 430. Over the course of that period, plaintiff visited Dr. Gevorkian five times. AT 420-25. The Ninth Circuit has required deference to the opinion of a treating physician who saw a claimant twice in 14 months. Ghossakian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994). The treatment relationship here was of similar length and involved more than twice as many visits. Accordingly, the ALJ committed

legal error by discounting Dr. Gevorkian's opinions on grounds that the treating relationship was "quite brief." The ALJ did not identify a treating source whose opinion contradicted that of Dr. Gevorkian and who had a more extensive treating relationship with plaintiff. This was not a sufficient reason for rejecting Dr. Gevorkian's opinions.

For the reasons explained above, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Gevorkian's opinions.

2. Dr. Ewing

Dr. Troy Ewing performed a mental status evaluation of plaintiff on November 3, 2010. AT 302. Dr. Ewing noted that plaintiff presented in a "depressed manner," his attention was fair, his concentration and memory were impaired, and his mood was depressed. AT 302, 305. He opined that plaintiff could adequately perform one or two step simple repetitive tasks as well as complex tasks. AT 306. Dr. Ewing further opined that plaintiff had a poor to fair ability to: accept instructions from supervisors and interact with coworkers and public, maintain regular attendance in the workplace, complete a normal workday or workweek without interruptions, and handle normal work-related stress from a competitive work environment. Id. He also concluded that plaintiff could not manage funds or perform work activities on a consistent basis without special or additional instruction. Id.

The ALJ gave Dr. Ewing's opinion little weight, reasoning that it was rendered after a one-time examination of the plaintiff, inconsistent with the findings contained in the body of the report, and disregarded by non-examining state agency psychiatrist, Dr. Mateus (later confirmed by psychiatrist Dr. Pan). AT 20. Dr. Ewing's opinion is contradicted by the observations and opinions of Drs. Bui (AT 288, 295 [urologist observing plaintiff with "[n]o anxiety, no depression, and no sleep disturbances"]) and Gevorkian (AT 429 [plaintiff can understand simple instructions but cannot carry them out]). Accordingly, the ALJ needed to state specific and legitimate reasons supported by substantial evidence for rejecting Dr. Ewing's opinion. Again, the ALJ failed to state such reasons.

The ALJ deemed Dr. Ewing's opinion less persuasive because it was rendered after a one-time examination. AT 20. This is nothing more than a restatement of Dr. Ewing's status as an

examining, rather than treating, doctor.  The ALJ did not hesitate to rely upon the opinion of Dr. Mateus — a state agency psychiatrist who has never examined plaintiff at all.  AT 20.  Dr. Ewing's status as an examining psychologist was an insufficient reason for rejecting Dr. Ewing's opinion.

The ALJ also reasoned that Dr. Ewing's opinion was inconsistent with the findings in his report.  The Commissioner asserts that Dr. Ewing's statement that plaintiff had a poor to fair ability to interact with supervisors, coworkers and the public was inconsistent with his observations that plaintiff had normal appearance, attitude, behavior, eye contact, speech, and social interactions during his examination.  See AT 302, 304, 306.  The observations upon which the Commissioner relies are only superficially relevant to plaintiff's ability to interact with supervisors, coworkers, and the public, and suggest no more than an ability to have appropriate initial interactions.  Those observations say nothing about plaintiff's ability to maintain relationships with supervisors and coworkers over time, or to interact with the public in any sustained way.  Dr. Ewing's other findings – that plaintiff had impaired attention, concentration, and memory, and suffers from major depressive disorder that was severe and accompanied by psychotic features, AT 305 – are fully consistent with his conclusion that plaintiff had a poor to fair ability to interact with supervisors, coworkers and the public.  Accordingly, this basis for the ALJ discounting of Dr. Ewing's opinion was insufficient.

Finally, the ALJ's reliance on Dr. Mateus's opinion in rejecting that of Dr. Ewing misconstrued the conclusions of Dr. Mateus.  Dr. Mateus, a state agency psychiatrist, completed a mental residual functional capacity assessment, dated April 7, 2011, based on a record review.  AT 365.  Dr. Mateus opined that plaintiff was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruption, interact appropriately with the general public, and accept instructions and respond to criticism from supervisors.  AT 363-64.  Dr. Mateus further opined that plaintiff has the ability to perform simple and some detailed tasks, had moderate problems with persistence, pace, and social functioning, and a mild problem with adaptation.  AT 365.  Dr. Mateus also submitted a written narrative which reviewed Dr. Ewing's

findings. AT 362. Dr. Mateus questioned plaintiff's credibility, id., but did not question Dr. Ewing's observations or conclusions. None of Dr. Mateus's criticisms were directed at Dr. Ewing's opinion. Accordingly, the ALJ's reliance on Dr. Mateus's opinion was not a sufficient reason for rejecting Dr. Ewing's opinion.

In sum, the ALJ failed to state specific and legitimate reasons based on substantial evidence for rejecting Dr. Ewing's opinion.

B. Remand

The ALJ failed to properly evaluate the opinions of Drs. Gevorkian and Ewing and remand is therefore appropriate. The remaining question is whether to remand this case to the ALJ for further proceedings or to order the payment of benefits. "The decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985). Generally, the Court will direct the award of benefits "in cases where no useful purpose would be served by further administrative proceedings or where the record has been thoroughly developed." Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399 (9th Cir. 1987). Remand for payment of benefits is appropriate where the ALJ erred in discrediting evidence and, absent any outstanding issues to be resolved, it is clear from the record that the ALJ would be required to find the plaintiff disabled were such evidence credited. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). Such is the case where the ALJ improperly failed to grant deference to a treating physician whose conclusions would compel a finding of disability. Ghokassian, 41 F.3d at 1303-04.

As explained above, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Dr. Gevorkian, a treating psychiatrist, and Dr. Ewing, an examining psychologist. Furthermore, it is clear from the evidence in the record that the ALJ would have been required to find plaintiff disabled if he had credited these opinions. During the February 8, 2012 hearing before the ALJ, plaintiff's administrative-level counsel asked the vocational expert a hypothetical question based on the limitations expressed in Dr. Ewing's opinion.[2] AT 58-59. The vocational

[2] The record indicates that the "hypothetical was based on the consultative examiner, Troy Evan (continued…)

expert stated that those limitations "would be preclusive." AT 59. As a result, it is clear from the record that the ALJ would have been required to find plaintiff disabled at step five of the sequential evaluation analysis because there are no jobs that plaintiff can perform given his residual functional capacity, age, education, and work experience. For these reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for immediate payment of benefits.

## VI. CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is granted;
2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is denied; and
3. This matter is remanded to the Commissioner for immediate payment of benefits.

DATED: March 23, 2015

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

[phonetic], report." AT 58. Later, the ALJ clarified that the report was Exhibit 4F in the record which corresponds to the report of Dr. Troy Ewing. AT 302.